# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ROBERT BRADLEY, | * | |
| Plaintiff, | * | |
| | .* | |
| v. | * | Civ. No. 25-4037-BAH |
| ACTS RETIREMENT-LIFE COMMUNITIES, INC., | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Robert Bradley ("Bradley" or "Plaintiff") brought suit against Acts Retirement-Life Communities, Inc. ("Defendant" of "Acts") alleging three discrimination-related claims stemming from a February 2025 altercation with a co-worker. ECF 6.[1] Pending before the Court is Acts' motion to dismiss Plaintiff's amended complaint (the "Motion"). ECF 8. Plaintiff filed an opposition, ECF 10, and Acts filed a reply, ECF 11. All filings include memoranda of law, and the Motion and opposition include exhibits.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Acts' Motion is **GRANTED in part** and **DENIED in part**.

---

[1] The original complaint is docketed at ECF 1.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    BACKGROUND[3]

Bradley worked for Acts at a senior living community in Easton, Maryland called Bayleigh Chase. ECF 6, at 2 ¶ 5. In February of 2025, Bradley, who is sixty-nine (69) years old and white, alleges that he was threatened by an African-American co-worker named Michael Lindsey ("Lindsey"). *Id.* ¶ 7. Specifically, Lindsey allegedly told Bradley that he would "beat [Bradley's] old ass." *Id.* ¶ 8. After the incident, Bradley "complained about Mr. Lindsey's actions to his supervisors" but no action was taken. *Id.* ¶ 9. Bradley alleges that he told supervision that "he did not feel it was safe for him to return to work until corrective action had been taking regarding Mr. Lindsey[.]" *Id.* ¶ 10. "While Plaintiff was waiting for [] Defendant to take action" against Lindsey, he complained that Acts was "was favoring [] Lindsey because he was African-American." *Id.* at 2–3 ¶ 12. "Less than two (2) weeks after Plaintiff's initial complaint [about Lindsey], [] Defendant terminated Plaintiff's employment." *Id.* at 3 ¶ 13.

Bradley filed a "Charge of Discrimination with the [Equal Opportunity Employment Commission ('EEOC')], which was cross-filed with the [Maryland Commission on Civil Right ('MCCR')], in which [Bradley] alleged harassment on the basis of race and age against [Acts]." *Id.* ¶ 14. Plaintiff also alleges that that he claimed in his EEOC charge that "Defendant retaliated against him for his protected activity." *Id.* Plaintiff initially pursued his EEOC complaint without counsel. *Id.* ¶ 17. Plaintiff alleges that "[t]he EEOC, after Plaintiff filed his initial inquiry, prepared a blank Charge of Discrimination1 for the Plaintiff to sign, which was signed by Plaintiff on or about November 17, 2025." *Id.* ¶ 16. In a footnote to his amended complaint, Plaintiff notes that the charge filed with the EEOC "contained the details of the relevant parties" but "failed to

---

[3] In reviewing a Rule 12(b)(6) a motion, a trial court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

include any facts as to the happening of the events" and left the "particulars section of the Charge

. . . blank." *Id.* at 3 n.1.  Plaintiff was interviewed by the EEOC and received a "Right to Sue

letter" on December 3, 2025. *Id.* ¶ 17.

Plaintiff ultimately retained counsel, who "reached out to the EEOC to inquire as to why it

had Plaintiff sign a blank Charge of Discrimination." *Id.* ¶ 19.  Following an investigation, "[t]he

EEOC determined that a blank Charge had, in sole error by the EEOC, been sent to Plaintiff and

immediately sent Plaintiff an amended Charge of Discrimination to sign." *Id.* at 4 ¶ 21.  Plaintiff

signed the amended charge on December 8, 2025, and a second "Right to Sue letter" was issued

"with regard to the amended Charge of Discrimination on or about December 12, 2025." *Id.* ¶ 26.

Plaintiff filed suit in federal court on December 9, 2025. ECF 1.  He amended his complaint

and now raises three claims: harassment (count 1), retaliation (count 2), and wrongful termination

(count 3).  ECF 6.   Acts filed a motion to dismiss the amended complaint, ECF 8, which is now

ripe for resolution.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim

upon which relief can be granted."  In considering a motion under this rule, courts discount legal

conclusions stated in the complaint and "accept as true all of the factual allegations contained in

the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  A court then draws all reasonable inferences in favor of the plaintiff and

considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet,

Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

## III.    ANALYSIS

### A.    Bradley has exhausted his age discrimination claims.

Defendant first argues that Plaintiff's discrimination and harassment claims must be dismissed because he failed to exhaust administrative remedies. Defendant argues that because Plaintiff's EEOC charge was blank it "thwarted the purpose of the exhaustion requirement because it neither put Defendant on notice of the alleged unlawful conduct nor did it allow for a reasonable investigation." ECF 8, at 7. Though Defendant acknowledges that Plaintiff "received a blank EEOC charge," it nonetheless argues that Plaintiff "signed and verified it." *Id.* at 18. Defendant also contends that the December 8, 2025 amended charge is untimely because it "was filed more than 300 days after the alleged discriminatory event occurred on February 2, 2025." *Id.* at 9.

Plaintiff counters that it was the fault of the EEOC that the initial charge was blank and that the amended charge came just days after the error was discovered. ECF 10, at 4–5. Moreover, Plaintiff notes that "it was the EEOC itself that initiated the amendment, not the Plaintiff – the EEOC rescinded its Right to Sue, having recognized its error." *Id.* at 4.

A plaintiff in an employment discrimination case is entitled to de novo review in the district court. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). However, a federal court engaging in that review "may only consider those allegations included in the EEOC charge," *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 407 (4th Cir. 2013), and those that "can reasonably be expected to follow the charge of discrimination." *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981); *see also Evans*, 80 F.3d at 963. This is because "[a]n employee seeking redress for discrimination cannot file suit until []he has exhausted the administrative process." *Balas*, 711 F.3d at 401 (citing 42 U.S.C. § 2000e–5(b)). "Rather than 'a formality to be rushed through,' this exhaustion requirement is 'an integral part of the Title VII enforcement scheme." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (citing *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005)). "For one thing, requiring a party to file a charge with the EEOC 'ensures that the employer is put on notice of the alleged violations,'" thereby giving it a chance to address the alleged discrimination prior to litigation." *Id.* (citing *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)). "For another, the requirement places the resolution of employment discrimination disputes initially in the hands of the EEOC." *Id.* "The goals of providing notice and an opportunity for an agency response would be undermined, however, if a plaintiff could raise claims in litigation that did not appear in his EEOC charge." *Id.* "To prevent such gamesmanship, [the Fourth Circuit has] held that the 'scope of the plaintiff's

right to file a federal lawsuit is determined by the charge's contents.'" *Id.* (citing *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)).

"At the same time, however, the exhaustion requirement should not become a tripwire for hapless plaintiffs." *Id.* at 594. "As the Supreme Court has made clear, '[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.'" *Id.* (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008)).

Of particular importance here, relevant regulations allow for an "amendment" to a previously filed EEOC charge to "cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b). "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." *Id.*

There is no dispute that on November 17, 2025, Plaintiff attempted to file an EEOC charge alleging discrimination by Defendant occurring on February 2, 2025. ECF 8-2, at 2; ECF 10-2, at 1. This submission, which the parties agree was generated by the EEOC, was clearly deficient in that it contained no "particulars" related to the alleged discrimination. *Id.* Nonetheless, on December 3, 2025, the EEOC issued a right to sue letter based on that clearly deficient charge. ECF 8-3, at 2. Just a few days later, Plaintiff resubmitted a more fulsome charge including specific allegations that a co-worker had referenced Bradley's age while threatening him, that Bradley raised the age-related comment with supervisors, and noting that he "further believe[d] that [he] was retaliated against for engaging in a protected activity" by being terminated. ECF 8-4, at 2;

6

ECF 10-3, at 1. A new right to sue letter issued on December 12, 2025, based on the allegations contained in the revised EEOC charge. ECF 8-5, at 2.

There is authority for finding exhaustion requirements satisfied when a plaintiff made an honest mistake or error in their submission so long as the error is promptly addressed. *See, e.g., Carter v. Washington Metro. Area Transit Auth.*, 503 F.3d 143, 146 (D.C. Cir. 2007) (finding dismissal inappropriate where a plaintiff "made a mistake" in writing of the date of an alleged incident of discrimination on an "EEOC questionnaire"). Here, the error in articulating Plaintiff's allegations appears to fall squarely on the EEOC as it generated a blank EEOC charge. This mistake was quickly remedied by the filing of an amended charge that properly included details supporting the allegation that a co-worker made an age-related insult and alleged improper retaliation for reporting that discrimination. Thus, the Court finds that the amended charge is one that "cure[s] technical defects or omissions" and "alleg[es] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12(b). These allegations "will relate back to the date the charge was first received" and thus Plaintiff's EEOC charge is timely filed. *Id.*

Of course, had Plaintiff failed to timely cure the EEOC's error, the result may be different. *See Sloop v. Mem. Mission Hosp., Inc.*, 198 F .3d 147, 149 (4th Cir. 1999) (finding no error in dismissing a case for failure to exhaust where a plaintiff failed to check the retaliation box and sent a letter to the EEOC asking how she could add a retaliation claim, but took no further action to do so); *Tillbery v. Kent Island Yacht Club, Inc.*, Civ. No. CCB-09-2956, 2010 WL 2292499, at *5 (D. Md. June 4, 2010) (finding dismissal appropriate where a "clerical error, however, was made not only by the EEOC representative who filled out [the plaintiff's] charge of discrimination, but also by [the plaintiff] herself on two separate occasions" and where the plaintiff, "who was represented

7

by counsel at the time, signed the formal EEOC charge under penalty of perjury despite its apparent inaccuracy, and [] failed to later amend the charge to correct the error"), *aff'd*, 461 F. App'x 288 (4th Cir. 2012). However, Bradley's case appears to be one that "fall[s] within that line of cases which permit suit under Title VII when, through no fault of the plaintiff, the EEOC has acted in some fashion to preclude the plaintiff from satisfying all of the statutory preconditions to suit." *Watkins v. Milliken & Co.*, 613 F. Supp. 408, 416–17 (W.D.N.C. 1984).

### B.      Bradley has not exhausted his claim of racial discrimination.

However, though the amended EEOC complaint clearly encompasses Bradley's age discrimination claims, the Court finds that it does not reflect exhaustion of his race-related claim. Since "EEOC charges often are not completed by lawyers," they must be construed "with utmost liberality." *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (citation omitted). "Title VII . . . sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Sydnor*, 681 F.3d at 594 (citing *Holowecki*, 552 U.S. at 402). "It would," the Fourth Circuit has cautioned, "be inconsistent with this framework to require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies." *Id.* That said, it must be repeated that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans*, 80 F.3d at 963. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones*, 551 F.3d at 300, *abrogated on other grounds by Fort Bend County, Texas v. Davis*, 587 U.S. 541 (2019).

There are no facts included in the EEOC charge supporting Bradley's claims of race-based discrimination beyond the mere acknowledgement of that Bradley is "white" and Lindsey is "black." *Id.* Indeed, the lone factual assertion in support of the argument that Bradley complained about race-based discrimination to his supervisors is included solely in the amended complaint, not the EEOC charge. Specifically, the amended complaint includes an allegation that "[w]hile Plaintiff was waiting for the Defendant to take action, he complained to Defendant regarding Defendant's lack of action against Mr. Lindsey" by "[stating] that the lack of action was because the Defendant was favoring Mr. Lindsey because he was African-American." ECF 6, at 2–3 ¶ 12. In contrast, Bradley includes in his EEOC charge an allegation that he was subject to harassment on the basis of his age founded on the claim that his co-worker threatened to "beat [Bradley's] old ass because [Bradley] told [Lindsey] to mind his own job and stop trying to control [Bradley]." ECF 8-4, at 1–2. Bradley also claims that he "complained about the hostile work environment," specifically Lindsey's threat, to the "Maintenance Foreman" and the "Maintenance Manager[,] as well as the police department," but was "discharged" "[s]hortly after filing [his] complaints[.]" ECF 8-4, at 2.

It is true that the charge does vaguely reference "race" as a basis of discrimination and notes Bradley's "*belief* that he was harassed [by Lindsey] because of [Bradley's] age (69) and [Bradley's] race (white)." ECF 8-4, at 2 (emphasis added). However, the Court cannot find exhaustion since there are simply no facts supporting such an allegation in the narrative portion of the EEOC charge. *See Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 440 (D. Md. 2015) (finding no exhaustion for a claim of discrimination due to national origin where a plaintiff "did not check the box for national origin discrimination in his EEOC charge, nor did he claim national origin discrimination or allege any facts relating to his national origin . . . in the narrative portion

9

of his EEOC charge"). Beyond these conclusory assertions, the factual component of the EEOC charge notes only that Bradley complained about age-based discrimination at the hands of Lindsey and reported this to management. ECF 8-4, at 2. As such, "the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation," and both state and federal claims alleging racial discrimination are "procedurally barred."[4] *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005); *see also McGuirk v. Noom, Inc.*, Civ. No. BAH-24-3715, 2026 WL 1983833, at *6 (D. Md. July 9, 2026) (finding that a plaintiff "may not bring the retaliation claim based on the supervisor's attempted poor review, which was omitted entirely from her EEOC charge and does not appear to be reasonably related to the allegations raised therein").[5] Having determined that the dismissal is not entirely appropriate

---

[4] Bradley attempts to preserve his state-based claims for race-related discrimination by arguing that his administrative charges "were cross-filed with [Maryland state officials and] Maryland possesses different timeliness standards than its federal counterparts." ECF 10, at 7 (citing Md. Code Ann. § 20-1004). However, for the reasons noted above, the *timeliness* of his filing as it relates to race discrimination is not the issue. Regardless of when he filed it, Plaintiff failed to articulate a claim for race-based harassment or retaliation in state or federal administrative charge and thus the claim is not exhausted under state or federal law. *See, e.g., Marshall v. Anne Arundel Cnty., Maryland*, Civ No. ELH-18-74, 2019 WL 568676, at *10 (D. Md. Feb. 12, 2019) (noting that MFEPA and Title VII exhaustion requirements are not materially different); *Washington v. Hair Cuttery Fam. of Brands*, Civ. No. PX-24-2542, 2025 WL 2085209, at *3 (D. Md. July 24, 2025) (evaluating exhaustion under state and federal retaliation claims under the same standard).

[5] It also bears noting that the bare allegation of race-based discrimination differs between the EEOC charge and Bradley's complaint. Whereas his EEOC charge notes an apparent belief that Lindsey harassed Bradley because of [his] age (69) and [his] race (white)," the lawsuit alleges that it was *management* who discriminated against Bradley on the basis of Bradley's race. ECF 6, at 7 ¶ 45 (alleging racial discrimination after Bradley complained that his supervisors were "refusing to take action against Mr. Lindsey due to [] Lindsey's race"). Thus, as it relates to his allegation of race-related discrimination, Bradley's EEOC charge is not "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Chacko*, 429 F.3d at 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b)). Stated differently, the complaint "involve[s] different actors and different time frames than those referenced in plaintiff's EEOC Charge" and thus the race discrimination claims are not exhausted. *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 290 (D. Md. 2023).

10

on exhaustion grounds, the Court now turns to the question of whether Bradley has stated a cognizable claim of age-based harassment and will later evaluate his retaliation count.

### C.    Bradley fails to allege a "hostile work environment."

Both parties agree that Plaintiff's claim of "harassment" is better described as one alleging a "hostile work environment" based on Plaintiff's age under the Age Discrimination in Employment Act of 1967 (the "ADEA") and the Maryland state analog.  ECF 8-1, at 11–14 (arguing Bradley failed to state a claim for hostile work environment); ECF 10, at 8 – 9 (countering that Bradley has stated such a claim and citing the elements for a hostile work environment claim in *Burns v. AAF-McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir. 1999)).  Assuming such a claim can be raised under the ADEA, *see Kendrick v. Carter Bank & Tr., Inc.*, No. 24-1377, 2025 WL 879703, at *6 n.8 (4th Cir. Mar. 21, 2025), Bradley must allege "that (1) he experienced unwelcome harassment; (2) the harassment was based on his age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on his employer," *id.* at *6.

"The standard for proving an abusive work environment is intended to be a very high one because the standard is designed to filter out complaints attacking the ordinary tribulations of the workplace." *Fordyce v. Prince George's Cnty. Maryland*, 43 F. Supp. 3d 537, 552 (D. Md. 2014) (quoting *Wang v. Metro. Life Ins. Co.*, 334 F. Supp. 2d 853, 864 (D. Md. 2004)). In assessing whether harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," courts in this Circuit "examine the 'totality of the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gordon v. Heath*, No. 23-2232,

2026 WL 1811021, at *6 (4th Cir. June 24, 2026) (first citing *Strothers v. City of Laurel*, 895 F.3d 317, 331 (4th Cir. 2018); and then citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "What 'interferes with work performance' or becomes 'threatening' can look different depending on the job and setting, which is why context always matters." *Id.* (citing *Strothers*, 895 F.3d at 331). Moreover, "even a single incident can meet the standard if 'extremely serious.'" *Id.* (citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281, 285–86 (4th Cir. 2015) (en banc) (finding it reasonable for plaintiff to claim a hostile work environment when she was called a racial slur only twice, because "an isolated incident of harassment, if extremely serious, can create a hostile environment")).

Bradley alleges that on one occasion his co-worker threatened to "beat [Bradley's] old ass." ECF 6, at 2 ¶ 8. Ordinarily, the one-time "utterance of an . . . epithet," here the allegation that Bradley was "old," even if an insult "'which engenders offensive feelings in a[n] employee,' does not sufficiently affect the conditions of employment to" establish a hostile work environment. *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Moreover, the Fourth Circuit has been clear that the trial court must look to "the substance of the comments themselves." *Lee v. W. Virginia Univ. Med. Corp.*, No. 25-1306, 2026 WL 1993164, at *5 (4th Cir. July 10, 2026). Here, Bradley himself acknowledges in his EEOC charge that the comment made by Lindsey was likely motivated by Lindsey's frustration with working with Bradley than by age-related bias. *See* ECF 8-4, at 2 (alleging in his EEOC charge that "[i]n February 2025, a black co-worker named, Michael Lindsey, threatened to beat my old ass because I told him to mind his own job and stop trying to control me"). Moreover, "[c]omments about age often do not 'carry the same animus as those about race or gender' because 'barring unfortunate events, everyone will enter the protected age group at some point in their lives.'" *Witzke v. Pepsi*

12

*Bottling Ventures, LLC*, Civ. No. RDB-17-0651, 2018 WL 4491219, at *6 (D. Md. Sept. 19, 2018) (quoting *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994)), *aff'd*, 773 F. App'x 130 (4th Cir. 2019). Regardless, the Court will engage with the question of whether the threat to "beat [Plaintiff's] old ass" can be described as the type of "extremely serious" incident that would amount to a "discriminatory changes in the terms and conditions of [Bradley's] employment." *Boyer-Liberto*, 786 F. 3d at 277 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

The analysis must start with *Boyer-Liberto* itself as it provides an example of the type of incident that, "though perhaps 'isolated,' can properly be deemed to be 'extremely serious.'" 786 F. 3d at 281 (citing *Faragher*, 524 U.S. at 788). In that case, a supervisor of the plaintiff chased down the plaintiff, yelled at the plaintiff and put her face so close to the plaintiff's that the plaintiff "could feel [the supervisor's] breath on her face," and "sprayed [the plaintiff's] face with saliva." *Id.* at 269. The apparent supervisor's "shouting" persisted as the plaintiff tried repeatedly to walk away, but the supervisor followed her and continued to yell threats including that "[I'm] going to get [you]" and "[I'm] going to make [you] sorry," culminating in the utterance of two highly offensive racial slurs in the presence of other employees. *Id.* at 270. It was this set of circumstances that led the Fourth Circuit to firmly reject "any notion that [its] prior decisions . . . were meant to require more than a single incident of harassment in every viable hostile work environment case." *Id.* at 281.

There is no claim raised here that Lindsey supervised Plaintiff. This matters because the Fourth Circuit was careful in *Boyer-Liberto* to clarify that "[i]n measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., 'a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.'" *Id.* (citing *Rodgers v. W.–S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)); *see also McIver v. Bridgestone*

13

*Americas, Inc.*, 42 F.4th 398, 408 (4th Cir. 2022) ("The status of the harasser is also a 'significant factor' to be considered; harassment by a supervisor tends to be more serious, while harassment by a co-equal is less serious."). Simply put, "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998). Lindsey was on equal footing with Bradley and thus his insult, however upsetting, was not charged with the authority of a higher-up.

Further, the "odious" statements at issue in *Boyer-Liberto* were far more extreme than Lindsey's utterance. The Fourth Circuit noted "[a]s we and several of our sister courts of appeals have recognized, "[p]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet [at issue in *Boyer-Liberto*] by a supervisor in the presence of his subordinates." *Id.* (citations omitted). Such comments are rightly described as "degrading and humiliating in the extreme." *Id.* (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001)). The same cannot be said of the term "old," which is the allegedly discriminatory descriptor used by Lindsey.

Further, there is no claim that Lindsey did anything to carry out his alleged threat to beat Bradley; indeed, there is virtually no detail provided about when, where, or under what circumstances the statement at issue was made. This stands in contrast to *Boyer-Liberto*, where the alleged supervisor chased the plaintiff at work, screamed at her, spewed saliva in the plaintiff's face, and threatened to harm her. *Boyer-Liberto*, 786 F. 3d at 269-70. Even in circumstances where unwanted physical conduct does occur between a plaintiff and a supervisor, this does not automatically create a hostile work environment. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (finding no hostile work environment where the plaintiff described an alleged pattern of conduct including "one particular encounter with [a supervisor] where[the supervisor]

14

yelled at [the p]laintiff, told her she was incompetent, pushed her down in her chair, and blocked the door to prevent [her] from leaving while he continued to yell at her"), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). Bradley's allegations do not include any claim that Lindsey touched him or even came close to doing so.

Thus, though Plaintiff obviously perceived the threat to be real—he admits he failed to return to work until Lindsey was removed and reported the incident to the police—the Court cannot conclude that this lone statement made by a non-supervisor was enough to instantly create a hostile work environment. *See Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 131 (E.D. Pa. 2020) (finding no race-based hostile work environment where the plaintiff was called an offensive racial slur and told she would "get [her] ass beat up" by a co-worker); *Duncan v. Lourdes Univ.*, No. 3:20-CV-2665-JGC, 2023 WL 5984163, at *7 (N.D. Ohio Sept. 14, 2023) (finding no hostile work environment when a co-worker told the plaintiff that she "needed to ger [her] ass beat for turning down" another co-worker's sexual interest in the plaintiff); *but see Henderson v. Lab. Finders of Virginia, Inc.*, No. 3:12CV600, 2013 WL 1352158, at *2 (E.D. Va. Apr. 2, 2013) (declining to dismiss a hostile work environment claim where the plaintiff alleged that they were "subjected to frequent and pervasive slurs and insults based on his sex, culminating in threats of violence for continuing to work" for the defendant). Acordingly, Bradley's federal and state claims[6] alleging a hostile work environment are dismissed.

### D.   Bradley has alleged retaliation under the ADEA.[7]

---

[6] Courts utilize the same framework to evaluate claims brought MFEPA and the ADEA. *Bomar v. Bd. of Educ. of Harford Cnty.*, No. 25-1065, 2026 WL 1031816, at *4 (4th Cir. Apr. 16, 2026). As such, Bradley's harassment claims brought under either statute are dismissed.

[7] Given the Court's finding as it relates to the failure to include race-related discrimination and retaliation in his EEOC charge, Bradley's retaliation claim must be viewed solely through the lens

"In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005). Bradley must plead that his termination "would not have occurred but for his reports of age discrimination." *Lee v. W. Virginia Univ. Med. Corp.*, No. 25-1306, 2026 WL 1993164, at *7 (4th Cir. July 10, 2026); *see also Cole v. Fam. Dollar Stores of Maryland, Inc.*, 811 Fed. App'x 168, 172 (4th Cir. 2020) (addressing retaliation claim under the ADEA using the "but for" causation standard announced in *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013))); *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (same). Bradley alleges, as discussed, that Lindsey threatened to harm him and made reference to Bradley's age in doing so. ECF 6, at 2 ¶ 8. Bradley alleges he reported this allegation of age discrimination to "his supervisors," which the Court assumes, and Acts does not dispute, *see* ECF 8-1, at 14, constitutes a protected activity. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (noting an employer may not "take adverse employment action against an employee for opposing discriminatory practices in the workplace"). Moreover, Bradley unquestionably asserts an adverse employment action in his termination. *See De Amat v. United Nat. Foods, Inc.*, Civ. No. BAH-21-2323, 2024 WL 3427165, at *6 (D. Md. July 15, 2024) ("Termination is a quintessential adverse employment action."). Thus, the focus is on the causal connection between these two events.

Defendant argues that "that an intervening act occurred between his alleged protected activity and his termination: 'Plaintiff's refusal to return to work until the situation had been

---

of his allegations that he was terminated for "complain[ing] of harassment on the basis of his age with regard to [] Lindsey's threats[.]" ECF 6, at 7 ¶ 45.

remedied.'" ECF 8-1, at 14 (citing ECF 6, at 7 ¶ 46). Plaintiff admits that he "refused to return to work" after Lindsey uttered his alleged threat. ECF 6, at 2 ¶¶ 10-11, 7 ¶ 46. Moreover, Bradley arguably alleges that his refusal to return to work was due to his concern for his safety, not due to the threat of continued discrimination. *Id.* at 2, ¶ 10. Choosing not to show up to work would likely provide a plausible non-discriminatory reason for his termination. *Baldwin v. Duke Energy Bus. Servs., LLC*, No. 3:12-CV-00212-MOC-DS, 2013 WL 6056578, at *1 (W.D.N.C. Nov. 15, 2013) (granting summary judgment where a plaintiff could not "show that retaliation for engaging in protected activity was the 'but for' cause of his termination where "he refused to return to work after being given three opportunities to do so"), *aff'd sub nom. Baldwin v. Duke Energy Corp.*, 583 F. App'x 251 (4th Cir. 2014). And while Defendants are correct in noting that it is possible for a plaintiff alleging discrimination "to plead [him]self out of court by identifying a legitimate and nondiscriminatory reason for the employer's adverse action . . . . such doomed pleading will happen only if the complaint fails to allege any other facts that support a plausible inference of causation." *Barbour v. Garland*, 105 F.4th 579, 599 (4th Cir. 2024). Plus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555 – 556). Bradley's complaint alleges that he was fired less than two weeks after reporting age-based discrimination by a co-worker, thus Bradley has posited a plausible inference of causation sufficient to overcome a motion to dismiss. *See Lowman v. Maryland Aviation Admin.*, Civ. No. JKB-18-1146, 2019 WL 133267, at *8 (D. Md. Jan. 8, 2019) (finding that, at the motion to dismiss stage, "[o]ne month is a sufficiently short time to establish a causal link by temporal proximity alone").

If Defendant's proffered justification for Bradley's termination proves true, it may be the case that Bradley cannot sustain his retaliation charge. However, as noted, Bradley alleges that

17

his termination occurred less than two weeks after his complaint of age-based discrimination. ECF 6, at 7 ¶ 48. "'[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action' may establish causation only if it is 'very close.'" *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The short duration between Bradley's complaint of age-based discrimination and his termination satisfies this burden. Of course, at the summary judgment stage, "mere temporal proximity is not necessarily enough to create a jury issue as to causation" for a retaliation claim. *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 720 (D. Md. 2013); *Staley v. Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014) (noting that "temporal proximity alone is not sufficient to establish that [a plaintiff's] engagement in protected activity was a 'but for' cause of her [adverse employment action]"). However, the Court must save a more fulsome evaluation of the viability of Bradley's retaliation claim for another day.

### E. Bradley has properly alleged wrongful discharge.

"The common law rule, applicable in Maryland, is that an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 467 (Md. 1981). However, Maryland recognizes the tort of wrongful discharge when the motivation for an employee's discharge contravenes some clear mandate of public policy. *Id.* at 470. A wrongful discharge claim is "inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 180 (Md. 1989); *see also Kerrigan v. Magnum Ent., Inc.*, 804 F. Supp. 733, 735 (D. Md. 1992) ("It is clear that when a remedy is available under Title VII or [state statutes], an action for wrongful discharge will not lie in Maryland.").

18

To establish a wrongful discharge claim, Bradley must show: (1) that "[he] was discharged"; (2) "that the basis for h[is] discharge violated a clear mandate of public policy"; and (3) "that there is a nexus between h[is] conduct and h[is] employer's decision to discharge h[im]." *Lawrence v. Town of Landover Hills*, Civ. No. LKG-24-03121, 2026 WL 1758051, at *5 (D. Md. June 18, 2026) (citing *Verbal v. Giant of Maryland, LLC*, 204 F. Supp. 3d 837, 843 (D. Md. 2016)). Defendant does not dispute the first element as Bradley was terminated from his position. Instead, Defendant argues that Bradley "fails to identify a clear mandate of public policy violated by Plaintiff's termination." ECF 8, at 16.

Bradley counters that his "wrongful discharge" claim is based on the allegation that he was fired for reporting Lindsey's threats to police. ECF 10, at 11.[8] Maryland's highest court has held that "a clear public policy mandate exists in the State of Maryland which protects employees from a termination based upon the reporting of suspected criminal activities to the appropriate law enforcement authorities." *Wholey v. Sears Roebuck*, 803 A.2d 482, 484 (Md. 2002). As such, Bradley's claim that he was terminated for calling police after a co-worker threatened him will survive.

Defendant notes in reply that "Plaintiff failed to properly plead any nexus between the alleged police report and his termination." ECF 8, at 8. Moreover, Defendant points to facts not

---

[8] If Bradley's wrongful termination claims fit within his discrimination and retaliation claims, it would clearly fail "because a statutory remedy exists" for those claims. *Cooper v. Balt. Gas & Elec. Co.*, Civ. No. JRR-23-3116, 2024 WL 3849526, at *20 (D. Md. Aug. 16, 2024); *see also Green v. iMentor, Inc.*, Civ. No. RDB-24-2567, 2025 WL 2299432, at *12–13 (D. Md. Aug. 8, 2025) (holding the same). Further, a wrongful discharge claim under Maryland law based on unlawful discrimination cannot be pled in the alternative on the theory that it might apply if the plaintiff cannot establish a statutory violation. *See Paunovic v. Genesis Healthcare, LLC*, Civ. No. ELH-17-2448, 2018 WL 3439263, at *7 (D. Md. July 17, 2018); *Green*, 2025 WL 2299432, at *13. However, Bradley alleges that he was wrongfully discharged for calling the police. ECF 6, at 9 ¶ 61.

19

in the complaint reflecting that Plaintiff admitted to not informing Defendant that he contacted the police about Lindsey's threats. *Id.* at 10. As to the former, Bradley plainly alleges that he "informed the Defendant that he had exercised his legal rights to report Mr. Lindsey's acts to the police." ECF 6, at 8 ¶ 60. He further alleges that he was "terminated [] for his report of [] Lindsey's threats of violence, both to [Defendant] *and to the police*." *Id.* at 9 ¶ 63 (emphasis added). As to the latter argument, fact-based arguments disproving Plaintiff's allegations are not appropriate at the 12(b)(6) stage as the Court's obligation is only to assess the "the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

Bradley's theory that he was terminated for calling police is obviously inconsistent with the allegations in his retaliation claim wherein he alleges that "[t]he *sole basis*" for his termination was his "complain[t] of harassment on the basis of his age[.]" ECF 6, at 6–7 ¶¶ 45, 50 (emphasis added). However, "the requirement to prove 'but-for' causation does not foreclose a plaintiff from pleading in the alternative." *Couch v. City of Virginia Beach*, 768 F. Supp. 3d 741, 754 (E.D. Va. 2025) (citing *Ingleson v. Burlington Med. Supplies, Inc.*, 141 F. Supp. 3d 579, 584 (E.D. Va. 2015)). Moreover, for "an event to be the 'but-for cause,' it need not be the sole cause of the adverse employment action." *Arthur v. Pet Dairy*, 593 F. App'x 211, 220 (4th Cir. 2015) (citing *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013)). Bradley has thus plausibly alleged a claim for wrongful discharge.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Bradley's allegation of retaliation for raising a claim of age-based discrimination and his wrongful termination claim survive. All other claims are dismissed.

A separate implementing order will issue.

Dated: July 29, 2026

/s/

Brendan A. Hurson
United States District Judge

21